STEVEN G. KALAR
Federal Public Defender
NED SMOCK
Assistant Federal Public Defender
1301 Clay Street
Suite 1350N
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant Tuan LUONG

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-15-00178 HSG |
| Plaintiff, | **DEFENDANT'S MOTION *IN LIMINE* NO. 3 RE: UNLAWFUL SEARCH OF SPRINT CELL PHONE RECORDS** |
| vs. | |
| TUAN NGOC LUONG, | Date: September 14, 2015<br>Time: 2:00 p.m. |
| Defendant. | Court: Hon. Haywood S. Gilliam |

## INTRODUCTION

The defendant, Tuan Ngoc Luong, moves *in limine* to exclude all fruits of the unlawful search of Sprint cell phone records.

## BACKGROUND

On February 17, 2015, Alameda County Sheriff Deputy Bryan Francis obtained a court order requiring Sprint PCS to turn over billing records and unlisted number information for telephone number (510) 921-7170, which was associated with Mr. Luong. Court Order, Application and Affidavit, attached at Exhibit A to Declaration of Ned Smock ["Smock Decl."]. Alameda County Sheriff's deputies seized a cell phone from Mr. Luong when they arrested him on February 17, 2015. They then obtained a state warrant to search the "Apple Iphone 5

belonging to Tuan Luong and working on the Sprint PCS network (510) 921-7170" for limited categories of information, specifically recent call history, contacts, text messages, picture, messages, pictures and videos stored in the phone.  Search Warrant Affidavit, attached at Exhibit B to Smock Decl.  On July 6, 2015, Mr. Luong moved to suppress evidence that had been obtained from a search of his phone that appeared to be outside the scope of the warrant.  [Docket No. 21]  The government thereafter, on July 13, 2015, disclosed for the first time discovery that included:  (1) a "CD containing the contents of the phone seized incident to the defendant's arrest"; (2) *federal* search warrant materials for the search of the phone; and (3) "[p]hotos of web browser from phone seized incident to the defendant's arrest."  *See* July 13, 2015, Letter, attached as Exhibit C to Smock Decl.

On July 15, 2015, the government disclosed that a deputy had "obtained the passcode to unlock Mr. Luong's phone from Mr. Luong a few days after Mr. Luong's arrest at a court appearance for Mr. Luong."  *See* July 15, 2015, Letter, attached as Exhibit D to Smock Decl.  The deputy used the passcode to take photographs of some of the contents of Mr. Luong's phone.  *Id.*  The government stated that, "[i]n light of these circumstances, the government will not seek to introduce any evidence from Mr. Luong's phone that was obtained by the use of his passcode," including "the recently produced search results from the federal search warrant."  *Id.*  The government then represented, in its opposition filed on July 17, 2015, that Mr. Luong's suppression motion was moot because it would not seek to introduce the evidence he sought to suppress.  *See* Docket No. 22 at 1.

On August 13, 2015, the government disclosed for the first time that it had obtained a federal search warrant for the Sprint PCS account associated with phone number (510) 921-7170, identified in the prior state warrant as the phone number for Mr. Luong's cell phone.  *See* August 13, 2015, Letter, attached as Exhibit E to Smock Decl.  The application in support of the warrant and the warrant are dated July 29, 2015.  *See* Application and Search Warrant, attached as Exhibit F to Smock Decl.  The warrant authorized the search and disclosure of "[a]ll electronic

and wire communication" related to the account, including all data and contact information, cell site information, internet activity, picture messages, text messages and SMS messages. *Id.*

### ARGUMENT

For two reasons, the Court should exclude all fruits of the recently obtained and disclosed warrant to Sprint to obtain records of the cellular phone linked to Mr. Luong. First, the government has not carried its burden of establishing that the Sprint evidence is not the fruit of the prior unlawful searches of the phone. Second, the affidavit in support of the warrant does not establish probable cause to believe that evidence of a crime would be found in the phone records.

**A. The fruits of the Sprint search should be excluded as the fruit of the prior unlawful searches of Mr. Luong's phone**

The government has at least implicitly acknowledged that deputies conducted at least two unlawful searches of Mr. Luong's cell phone: (1) a warrantless search using the passcode a deputy unlawfully obtained from Mr. Luong and (2) a search that went beyond the bounds of the state search warrant they obtained for the cellphone. After Mr. Luong moved to suppress the fruits of the unlawful phone searches, and the government argued that the motion was moot because it would not seek to introduce the evidence obtained from his phone, it sought and obtained a warrant to Sprint to obtain more information about the phone. The government should not be allowed to introduce the fruits of the Sprint warrant at trial.

The exclusionary rule applies to "derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." *Murray v. United States*, 487 U.S. 533, 536-37 (1987) (internal quotation marks omitted). The government bears the burden of establishing that a subsequent warrant search "was in fact a genuinely independent source of the information and tangible evidence" it seeks to introduce. *Id.* at 542. Its burden includes establishing "that no information gained from the illegal entry affected . . . *the law enforcement officers' decision* to

seek a warrant." *Id.* at 540 (emphasis added).

The government in this case did not cite in the affidavit in support of the Sprint warrant evidence obtained from the prior illegal searches of Mr. Luong's phone. However, this is not enough to carry its burden of establishing that the Sprint warrant truly was independent of the prior illegal searches. It has not established, as it must, that its *decision to seek a warrant* was not affected by the prior illegal searches. *See, e.g.*, *United States v. Hill*, 55 F.3d 479, 481 (9th Cir. 1995) (remanding to district court to make explicit findings about whether agents would have sought warrant absent prior illegal search). Under the circumstances of this case, it cannot carry this burden.

The sequence of events indicates that the government cannot carry its burden of proving that the decision to seek the Sprint warrant was truly independent of the prior unlawful searches of Mr. Luong's cellphone. Law enforcement officers knew as of February 17, 2015 both the phone number of Mr. Luong's phone and that it operated on the Sprint network. Exhibit B to Smock Decl. Indeed, state law enforcement officers at that time sought a limited court order from Sprint related to billing records for the phone number linked to Mr. Luong. Yet the government did not apply for the much broader Sprint warrant for more than five more months -- until after Mr. Luong moved to suppress all fruits of the unlawful searches of his cellphone.

The Court should suppress all fruits of the Sprint warrant because the government cannot carry its burden of establishing that it truly was independent of the prior illegal searches of Mr. Luong's phone.

**B.  The affidavit does not establish probable cause**

The Court also should suppress all fruits of the Sprint search because the affidavit in support of the warrant did not establish probable cause for the search.

To be constitutionally valid under the Fourth Amendment, a search warrant affidavit must establish probable cause. Specifically, the Fourth Amendment "requires the government to establish by sworn evidence presented to a magistrate that probable cause exists to believe that an

offense has been committed and that items related to that offense . . . will be found on the premises sought to be searched at the time the warrant is issued." *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir. 1988); *see also United States v. Rubio*, 727 F.3d 786, 795 (9th Cir. 1983) ("The magistrate must be provided with sufficient facts from which he may draw the inferences and form the conclusions necessary to a determination of probable cause.").

Determining whether an affidavit establishes "probable cause" is a fact-intensive exercise, depending upon the "totality of the circumstances" and "factual, practical considerations." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). Probable cause in this context means a "fair probability that contraband or evidence is located in a particular place." *Id.* at 231. "A reviewing court should find that probable cause is not met when the issuing judge lacked a substantial basis for concluding that probable cause existed." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (internal quotation marks, brackets and ellipses omitted).

Whether probable cause exists ultimately depends on whether the affidavit presents enough information for a magistrate independently to determine probable cause. The magistrate's issuance of a warrant "cannot be a mere ratification of the bare conclusion of others." *Gates*, 462 U.S. at 230. An affidavit must contain more than "mere conclusory allegations that a suspect was engaged in criminal activity." *United States v. Angulo-Lopez*, 791 F. 2d 1394, 1397 (9th Cir. 1986); *see also, e.g., Rubio*, 727 F.2d at 795 (holding that affidavits that described indicia typically kept by Hell's Angels, included facts establishing that defendants were Hell's Angels associates and stated that defendants had been indicted for associating with RICO enterprise (Hell's Angels) did not establish probable cause; "the magistrate had no substantial basis for concluding that probable cause existed"); *United States v. McCain*, 271 F. Supp. 2d 1187, 1194-95 (N.D. Cal. 2003) (holding that misstatements in affidavit about source of information "prevented the magistrate from exercising proper judgment"). Rather, "[a]n affidavit must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause

determination." *Underwood*, 725 F.3d at 1081 (emphasis added).

The affidavit in this case sought records for the "Sprint account associated with cellular telephone number (510) 921-7170." Exhibit F to Smock Decl. The only reference to this phone number in the "Facts Establishing Probable Cause" section of the affidavit (¶¶ 11-23) is the statement that the victim of the alleged robbery "contacted the [car] seller by phone at telephone number (510) 921-7170 to discuss purchasing the car." *Id.* ¶ 12. The affidavit does not state that this phone number was used to post the ad on Craigslist. It does not state that this phone number was subscribed to by Mr. Luong. It does not state that this was the phone number used in the "undercover sting operation" that led to Mr. Luong's arrest. It does not state that any cellphone was seized from Mr. Luong at his arrest or otherwise obtained from or connected to him. In short, there are no facts in the affidavit indicating that the phone number was used for anything other than a call (or possibly calls) from the victim to arrange a meeting about the car. *Id.* ¶ 12.

Although the affidavit states the affiant's opinion that "persons who commit these types of crimes -- armed robbery and illegal possession of firearms -- often use their smart phones to post ads on the Internet and leave evidence of their crimes in their smart phones or the accounts associated therewith," *id.* ¶ 23, there are no facts in the affidavit establishing that the phone number for which the warrant was sought is, in fact, a smart phone. Nor are there facts indicating that the phone number for which the warrant was sought belonged to the person who committed the alleged robbery and gun possession. Accordingly, the affiant's conclusions about smart phones and the behavior of robbers and gun-possessors are foundationless as to the phone number and "cannot be used to support a finding of fair probability that . . . evidence would be found" in the Sprint account. *Underwood*, 725 F.3d at 1083; *see also United States v. Weber*, 923 F.2d 1338, 1343 (9th Cir. 1990) (rejecting expert testimony in affidavit as "foundationless" because "there was not a whit of evidence in the affidavit indicating that [the person whose home was to be searched] was a 'child molester'").

**CONCLUSION**

Because the Sprint search was the fruit of the previous illegal search and because the affidavit did not establish probable cause, the Court should exclude all fruits of the Sprint search.

Dated: August 31, 2015

                                            Respectfully submitted,

                                            STEVEN G. KALAR
                                            Federal Public Defender

                                            /s/ Ned Smock

                                            NED SMOCK
                                            Assistant Federal Public Defender